Leonard **DOWNS** et al., Plaintiffs,

v.

**DEPARTMENT OF PUBLIC WELFARE, HAVERFORD STATE HOSPITAL, et al., Defendants.**

Civ. A. No. 73–1246.

United States District Court, E. D. Pennsylvania.

Dec. 20, 1974.

See also D.C., 368 F.Supp. 454.

David Ferleger, Mental Patient Civ. Liberties Project, Philadelphia, Pa., for plaintiffs.

Barry Roth, Commonwealth of Pa. Dept. of Public Welfare, Harrisburg, Pa. for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

In this civil rights action brought against state agencies and individual state officials, there is presently before the Court plaintiffs' motion for an award of attorney's fees[1], limited to the time and services preceding this Court's approval of a consent decree in this action. This motion was filed subsequent to the Court's approval of the consent decree. We deny this particular request for an award. This disposition is based principally upon the consent decree.

### I

This action was brought to attack the system of labor by patients of state mental institutions of the Commonwealth of Pennsylvania. Plaintiffs alleged that a system of forced labor, in violation of the Eighth, Thirteenth and Fourteenth Amendments, pervaded the state's system of mental health institutions.

The defendants filed a motion to dismiss. The Court dismissed the com-

---

1. In addition, plaintiffs have presented a motion for amendment of the Court's order on the motion to dismiss so as "to name the two state entities as defendants" and a motion for reconsideration of the Court's discussion of respondeat superior in our prior memorandum. We deny both motions.

plaint as to the state agency defendants on the basis of the Eleventh Amendment and dismissed the damage claims against the individual defendants without prejudice because of the paucity of factual allegations with respect to their involvement in the alleged coercion to work directed against the plaintiffs and/or the class they sought to represent. Downs v. Department of Public Welfare, 368 F.Supp. 454 (E.D.Pa.1973).

Subsequently, on February 11, 1974, the Court granted plaintiffs motion to maintain the action as a class action under F.R.Civ.P. 23(b)(2) and defined the class as "all voluntary and involuntary inmates of state mental health facilities in Pennsylvania except for those whose incarceration is pursuant to conviction of a crime".

On May 7, 1974, the Court approved a consent decree entered into between the parties to this action. The consent decree covers the class described above and provides, generally, that coercion will not be applied to force patients to work and for payment for patient labor. The decree further provides for the implementation of a plan to eliminate "peonage"; and "peonage" is defined in the consent decree at paragraph 6 as follows:

"Peonage exists if a patient/resident is performing assigned labor which in any way contributes to the operation and/or maintenance of the institution or is in a sheltered employment program and said work is not:

(a) voluntary on the part of the patient/resident; and,

(b) justified on the basis of individual habilitation/rehabilitation needs and documented in his or her medical record; and,

(c) remunerated according to the Fair Labor Standards Act, i. e., wage and hours in reference to Regular Employment of Handicapped Individuals and Sheltered Employment of Handicapped Individuals.

"Work or labor shall not include tasks that a patient/resident may do at the conclusion of an instructional activity session (cooking, sewing, arts and crafts, recreational activities and the like) where the individual assists with the cleanup of the immediate work or play area. Patients may be required to perform tasks of a personal housekeeping nature such as the making of one's bed."

Significantly, paragraph eleven of the consent decree provides:

"The Named plaintiffs waive any and all claims for back pay, damages, and/or restitution that may have been sought up and until the date of this Consent Decree Order. It is agreed that the recent United States Supreme Court decision of Edelman v. Jordan, [415] U.S. [651, 94 S.Ct. 1347, 39 L. Ed.2d 662] (1974) No. 72–1410 precludes back pay in actions such as this."

II

Plaintiffs' counsel is the Director of the Mental Patient Civil Liberties Project located in Philadelphia. That organization is non-governmental and non-profit and represents without charge, present and former inmates of mental institutions in attempts to vindicate their rights. The project is supported solely by contributions from private foundations and occasional institutional consultant's fees.

The award of attorney's fees sought is modest. The present request only includes the period up to and including the entry of the consent decree and even within that time frame excludes many hours and efforts.

Nevertheless, we are compelled, by the circumstances and posture of the action, for the reasons set out below, to deny the present motion for an award.

The plaintiffs argue that the Court may properly award attorney's fees against the state and/or the individual defendants.

The defendants argue: first, that the Eleventh Amendment bars an award of attorney's fees against the state and that insofar as plaintiffs seek an award from the individuals it is really a fiction for an award against the state; second, that plaintiffs' counsel did not seek nor mention obtaining attorney's fees throughout the entire negotiation period of the consent decree which lasted for four months and since negotiations involved back pay, etc., counsel should have sought fees at that time; third, that paragraph eleven of the decree precludes any monetary payment; fourth, that there is no prevailing party but rather both plaintiffs and defendants agreed to make impossible a practice that may have been occurring; and, finally, that there has been no finding of culpability in regard to the individual defendants and they are not liable in their individual capacities for damages to plaintiffs and, in fact, that the plaintiffs never amended their complaint after their damage request was dismissed without prejudice to plaintiffs' right to amend their complaint to include allegations of personal involvement in illegal acts by the individual defendants.

There are two possible approaches to an award of fees. First, the Court may order the individual defendants to pay an award out of state funds. Second, the Court may make a direct award of attorney's fees against the individual defendants for which they would be responsible.

■ We agree with the plaintiffs and the Third Circuit that there is a need for an award of counsel fees in public interest cases involving the enforcement of compelling constitutional policies.

"Withholding an award of attorneys fees in a case where a constitutional violation has been established removes a substantial incentive toward efforts looking to vindicate Constitutional rights. . . . [The] public has an interest in having its state related institutions act in compliance with the fourteenth amendment." Skehan v. Board of Trustees of Bloomsburg State Col., 501 F.2d 31, 44 (3d Cir. 1974).

We are aware of the fact that there is and has been both before and after the Supreme Court's decision in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), a conflict in the courts with respect to the question of whether a federal court can order individual state officer defendants to satisfy an attorney's fees award from state funds. Goode et al. v. Rizzo et al., 506 F.2d 542 [2] (3d Cir., filed Nov. 1, 1974); Skehan v. Board of Trustees of Bloomsburg State Col., *supra*; Jordan v. Fusari, 496 F.2d 646 (2d Cir. 1974); Named Ind. Mem., San Antonio Con. Soc. v. Texas Hwy. Dept., 496 F.2d 1017 (5th Cir. 1974) (rehearing en banc granted); Taylor v. Perini, 503 F.2d 899, (6th Cir. 1974); Jordan v. Gilligan, 500 F.2d 701 (6th Cir. 1974); Gates v. Collier, 489 F.2d 298 (5th Cir. 1973); Gray v. Creamer, 376 F.Supp. 675 (W.D. Pa.1974); Sincock v. Obara, 320 F.Supp. 1098 (D.Del.1970).

Defendants argue that the Third Circuit has held that the Eleventh Amendment precludes any monetary relief, equitable or legal, except insofar as it is prospective, in an order directed against individual state officer defendants which must be paid from state funds and has held this rule applicable to an award of attorney's fees. Gerald G. Goode et al., v. Frank L. Rizzo et al., *supra*; Skehan v. Board of Trustees of Bloomsburg State Col., *supra*.

*Skehan* and *Goode* did not squarely confront the Third Circuit with such an award and thus are not controlling. We believe *Edelman* left open the propriety of an award, such as that described above, in a situation where private coun-

---

**2.** This issue is discussed in Goode although we note that state officers are not involved therein.

sel has vindicated a plaintiff's federal statutory and/or constitutional rights.

We do not believe that merely deciding whether relief is prospective or retroactive fully conforms to the Supreme Court's analysis. Rather, such an approach creates a mechanical standard of decision in an area where the Supreme Court, itself, has recognized that "the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night". Edelman v. Jordan, *supra*, 415 U.S. at 667, 94 S.Ct. at 1357. A mechanical approach, based on the distinction between prospective and retroactive relief, although it may provide certainty in decision-making, does not provide sufficient flexibility to reconcile the tension of the competing policies of the Eleventh Amendment and Ex parte Young for all purposes. Specifically, the Supreme Court clearly envisaged that an accommodation of the policies of Ex parte Young and of the Eleventh Amendment may, in some cases, warrant a decree necessitating a limited retroactive monetary award. Such a case would be one where, for example, the retroactive monetary relief is considered necessary to the accomplishment of future compliance with federal statutory and/or constitutional law. In such a case the retroactive relief may be permissible where it is essentially remedial rather than compensatory. Edelman v. Jordan, *supra*, 415 U.S. at 666–668, 94 S.Ct. at 1357–1358.

Attorneys fees provide a necessary and substantial incentive to efforts looking to vindicate statutory and constitutional rights. Yet, the defendants' conclusion with regard to the Eleventh Amendment and attorneys fees will necessarily and predictably frustrate the policy of awarding attorneys fees in such cases and so dilute their significance as an incentive to bringing such suits. For these reasons, we believe that an award of counsel fees is both clearly remedial and an integral part of a decree providing for prospective relief from violations of federal statutory and/or constitutional rights. In light of the realities of the economic conditions of those for whom such suits are most frequently brought and the expense of litigation, the fiscal impact of such awards upon the state treasury must be considered an inevitable, and so a permissible, consequence of the principle of Ex parte Young, if that principle is to have any practical impact. Moreover, awards of attorneys fees may be "tailored" to alleviate their fiscal impact pursuant to Eleventh Amendment considerations without vitiating their positive impact towards the achievement of the policies recognized by Ex parte Young. This analysis leads us to the conclusion that the Eleventh Amendment does not bar an order directing individual defendants to satisfy an award of attorneys fees from state funds.

█ With respect to an award against the individual defendants, personally, there is no Eleventh Amendment problem. Both *Skehan* and *Goode* make clear that an award of attorney's fees against individual defendants is permissible and, depending on the facts of each case, may be appropriate.

Consequently, we do not hold that the Eleventh Amendment bars an order directing the individual defendants to pay an award out of state funds or an award against the individual defendants for which they would be responsible. Rather, we hold that, under the circumstances of this case, the consent decree renders an award of attorney's fees, as a matter of discretion, inappropriate.

The defendants argue that the reference in paragraph eleven of the consent decree to damages, etc., necessarily implies a waiver of attorney's fees. Plaintiffs argue that the lack of specific reference to attorney's fees means they are not waived and state that, in fact, there was no such intention. However, we need not consider the issue of the effect

of the consent decree formulated in this semantic manner.

Fundamentally, by virtue of the consent decree, the defendants bargained for and achieved an end to the litigation while plaintiffs bargained for and obtained a decree they desired. The defendants entered into the decree quickly after the disposition of the motion to dismiss and at a time when the defendants, as individuals, were under no threat of monetary liability. The plaintiffs achieved, at least in their view, all they could have accomplished had they gone to trial and prevailed on the merits; and, quite probably, they accomplished more. Moreover, the plaintiffs faced a difficult task in prevailing on their claims.

As a result of the consent decree, there have been no findings of liability on the part of the remaining individual defendants. No constitutional deprivation was established. The record affords no basis for such findings and the Court, of course, expresses no opinion as to whether any such liability could have been established.

■ With respect to personal liability for an award, *Skehan* and *Goode* make clear that wrong doing on the part of a particular individual is a necessary predicate to such an award. There is presently no basis for a finding of wrong doing. The consent decree, at a minimum, includes, as part of the bargain, freedom from trial at this time in an attempt by the plaintiffs to prove personal wrong doing on the part of the defendants so that attorney's fees may be recovered from them personally. Consequently, the defendants cannot be held personally liable for an award of attorney's fees.

Plaintiffs argue that in public interest litigation where rights are vindicated without a prevailing party an award of attorney's fees is nonetheless appropriate. See, e. g., Sierra Club v. Lynn, 364 F.Supp. 834, 847–851 (W.D.Tex. 1973). In the context of this litigation,

such a theory would be limited to an award which the individual defendants were directed to satisfy from state funds. Based on our discussion above, we do not consider the Eleventh Amendment to preclude such a theory or to bar such an award, and there may be cases where this theory would be an appropriate basis for an award. However, this is not such a case.

■ We do not rely on the theory that such an award is waived by the consent decree but rather rely on the following factors. Of course, although the decree obviously contains reforms, no constitutional violation has been established. Nor, for the reasons set out above, can the plaintiffs now undertake to establish a violation. Moreover, the defendants, as state officers and on the state's behalf, moved reasonably and quickly in this action to enter into the consent decree. Under these circumstances, an award for the period requested would be an inappropriate exercise of this Court's discretion.

### III

We do not decide today if plaintiffs' counsel has a valid claim for an award of attorney's fees based on his activities pursuant to the implementation of the consent decree. A request for such an award is not presently before us. All concerned are aware that the issues involved with respect to this latter time period are not identical to those presently before the Court.

We do note that the consent decree imposes certain duties on plaintiffs' counsel. These duties, of course, assist the state in implementing a program, agreed upon by responsible state officials, designed to protect the constitutional rights of patients at state mental health institutions and so benefit both the state and the public.

We have consciously limited this decision on the preconsent decree award request to the narrowest possible grounds. The issues involved in a post-consent de-

cree award request appear to be somewhat different and both because it is unnecessary to address them at this time and because the parties have not fully considered them, we express no opinion on them.